## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                          No. CR 07-1825 JB

ROMAN ALVAREZ-LOPEZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Objection to the Pre-Sentence Report, filed October 22, 2007 (Doc. 14); and (ii) the Defendant's Amended Objection to the Pre-Sentence Report, filed October 23, 2007 (Doc. 15).  The Court held a sentencing hearing on November 5, 2007.  The primary issue is whether Defendant Roman Alvarez-Lopez' conviction in Arizona for violation of A.R.S. § 13-3415 is a felony under the United States Sentencing Guidelines. Because the Court concludes that A.R.S. § 13-901.01 prevents Alvarez-Lopez' prior conviction from meeting the definition of a felony, the Pre-Sentence Report incorrectly enhanced his offense level by 4 levels, thus the Court will sustain his objection.  See Presentence Investigation Report ("PSR") ¶ 13 at 4, disclosed October 17, 2007.

## FACTUAL BACKGROUND

On May 25, 2001, an officer with the Phoenix, Arizona Police Department observed a vehicle collision in which Alvarez-Lopez was involved. See PSR ¶ 22, at 6.  Alvarez-Lopez was arrested for his involvement in the hit-and-run collision.  See Case No. CR 2001-011810, Maricopa County Superior Court, Arizona.  A subsequent search of Alvarez-Lopez' car revealed a baggie of

white powder.  See PSR ¶ 22, at 6.  A breath test yielded results of 0.221 and 0.231.  See id.

Alvarez-Lopez entered into a plea agreement and was subsequently convicted only for possession

of drug paraphernalia, his first drug offense, which was punishable as a class 6 felony under Arizona

law.  See id.  The plea agreement outlines the possible punishment: "The crime carries a

presumptive sentence of 1 year, a minimum sentence of .5 years (.33 years if the court makes

exceptional circumstances finding); and a maximum sentence of 1.5 years (2 years if the trial court

makes exceptional circumstances finding.)."

## PROCEDURAL BACKGROUND

Paragraph 13 on page 4 of the PSR assesses a 4-level increase in the offense level based on

the Arizona conviction for possession of drug paraphernalia.  According to the PSR, Alvarez-Lopez'

drug paraphernalia conviction is a class 6 felony under Arizona law and, therefore, counts as a

felony under U.S.S.G. § 2L1.2(b)(1)(D) of the United States Sentencing Guidelines.  See PSR ¶ 13,

at 4.

The United States has not submitted an objection to the PSR.  On October 23, 2007, Alvarez-

Lopez submitted his amended objection to paragraph 4 on page 13 of the PSR.  See  Defendant's

Amended Objection to Pre-Sentence Report1[sic], filed October 23, 2007 (Doc. 15)("Amended

Objection"). The Amended Objection corrected a typographical error that erroneously cited to

U.S.S.G. § 2L1.1(b)(1)(D) rather than U.S.S.G. § 2L1.2(b)(1)(D). See id. at 1.  In Defendant's

Amended Objection to the Presentence Report, Alvarez-Lopez argues that his conviction for

possession of drug paraphernalia under A.R.S. §§ 13-3408 and 13-701 is punishable by up to one

year imprisonment.  See Amended Objection at 2.

Alvarez-Lopez objects to a 4-level increase based on the possession of drug paraphernalia

conviction because he argues that offense does not meet the Guideline definition of "felony." Amended Objection, at 1-2.  He requests that the Court sustain his objection and find that the 4-level increase in offense level is not justified because his prior Arizona conviction for possession of drug paraphernalia does not meet the Guideline definition of "felony." Id. at  2.

The United States Probation Office ("USPO") prepared an Addendum to the PSR dated October 30, 2007.  See PSR, Addendum ("PSR Addendum").  The USPO stated that, in the case of Alvarez-Lopez' prior conviction of Possession of Drug Paraphernalia, a Class 6 Undesignated Felony in Maricopa County, Arizona, it had determined that the offense carries a presumptive sentence of one year.  See PSR Addendum, at 1.   The USPO stated that, in speaking to the prosecutor of the prior conviction, it learned that the offense is punishable by a maximum term of two years imprisonment. See id.

The USPO also attached to its Addendum a copy of the plea agreement for review by the Court and the parties.  The USPO maintains its position that Alvarez-Lopez' prior conviction for Possession of Drug Paraphernalia qualifies as a 4-level enhancement under the United States Sentencing Guidelines.  See PSR Addendum, at 1.

During the November 5, 2007 sentencing hearing, the Court provided citations to several cases the Court had found and believed might be relevant to resolving the issue that Alvarez-Lopez' objection presents.  See Transcript of Hearing at 11:20-12:3(taken Nov. 5, 2007)("Tr.")(Court).[1] The Court advised the parties that they were allowed to provide the Court with their comments on the listed cases.

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

On November 6, 2007, the Court received a letter from Alvarez-Lopez' attorney, Erlinda Johnson.  See Letter Addressing Some of the Legal Points Raised by the Court During Sentencing Hearing in United States v. Alvarez-Lopez, CR-07-1825 JB ("Johnson Letter").  In Ms. Johnson's letter to the Court, she states that Alvarez-Lopez admits that he was convicted of A.R.S. § 13-3415 for possession of drug paraphernalia.[2]  See Johnson Letter at 1.  Ms. Johnson further states that, pursuant to A.R.S. § 13-701,  Alvarez-Lopez' class 6 felony shall be punishable by one year imprisonment.  See Johnson Letter at 1.  The letter states that A.R.S. § 13-702 explains that § 13-701 provides the sentence for a first conviction of a felony, except those felonies involving the specific situations listed in A.R.S. § 13-702.  See Johnson Letter at 1.

In her letter, Ms. Johnson commented on several of the cases that the Court provided.  Ms. Johnson stated that she did not believe that United States v. Smith, 844 F.2d 793 (9th Cir. 1988)(Table), 1988 WL 33362, was applicable to Mr. Alvarez-Lopez' case, because United States v. Smith involved the possession of a firearm.  See Johnson Letter at 1-2.  See id.  Ms. Johnson argued that the United States Court of Appeals for the Ninth Circuit in United States v. Smith looked to the maximum offense of 1.5 years because the offense involved a firearm.  Furthermore, Ms. Johnson stated that United States v. Murillo, 422 F.3d 1152 (9th Cir. 2005),  was also  inapplicable, because the Ninth Circuit determined that what guides the determination whether an offense is a felony is the statutory term of imprisonment and not the maximum sentence possible under the guidelines.  See Johnson Letter at 2.  Ms. Johnson also commented on Lafarga v. INS, 170 F.3d

_____

[2]The Court notes that the statute to which Ms. Johnson refers in her letter as the statute of Alvarez-Lopez' prior conviction is different from the statute she listed in her Amended Objection.  See Johnson Letter at 1; Amended Objection at 2.  After reviewing both statutes, the Court believes that the statute listed in Ms. Johnson's letter, and not in her Amended Objection, is correct.

1213 (9th Cir. 1999), contending that, if the Court employs the analysis in <u>Lafarga v. INS</u>, because there is no document in this case that indicates the designation of Alvarez-Lopez' crime, the Court, under the rule of lenity should find that Alvarez-Lopez' conviction is not a felony.  <u>See</u> <u>id.</u>  Finally, Ms. Johnson contends that  the Court should not reach the determination from <u>Garcia-Lopez v.</u> <u>Ashcroft</u>, 334 F.3d 840 (9th Cir. 2003), that, absent a designation as a misdemeanor, the Court assumes the prior conviction is a felony, because the maximum penalty for Alvarez-Lopez' first offense is one year. <u>See</u> <u>id.</u>

The Court received a letter from the United States on November 8, 2007.  <u>See</u> Letter Regarding <u>United States v. Alvarez-Lopez</u>, 07-1825 JB ("United States Letter").  In the United States' Letter, Assistant United States Attorney Kimberly Brawley states that a first time offender who is convicted of a class 6 undesignated felony can be sentenced to imprisonment for up to 18 months under A.R.S. § 13-702 if any of the listed aggravating factors are present.  <u>See</u> United States Letter at 2.  Ms. Brawley states that one such aggravating factor is being in violation of 8 U.S.C. § 1325 at the time the Arizona offense was committed.[3]  <u>See</u> United States Letter at 2.  The United States contends that Alvarez-Lopez was in violation of 8 U.S.C. § 1325 when he committed Possession of Drug paraphernalia.  <u>See</u> United States Letter at 2.  The United States goes on to say that, according to the Arizona state statute, an undesignated felony should be treated as a felony for all purposes until such time as the court may actually enter an order designating the offense as a misdemeanor.  <u>See</u> <u>id.</u> at 3; A.R.S. § 13-702(G).  Ms. Brawley points out that Alvarez-Lopez'

---

[3]The Court notes that, unlike the current version, the version of A.R.S. § 13-702 that was in effect in 2001 at the time of the commission of Alvarez-Lopez' crime did not list violation of 8 U.S.C. § 1325 as a specific aggravating factor, but stated that the state sentencing court can consider "[a]ny other factor that the court deems appropriate to the ends of justice" when determining if an aggravating factor is present.  A.R.S. § 13-702C(18).

conviction was never designated and thus is most likely regarded as a felony under Arizona state law.  See id.

The United States states that, at the time the Presentence report addendum was written and disclosed to the Court and to the parties, the United States agreed with the Probation Officer's assessment.  See id. at 2.  Ms. Brawley goes on to say, however, that since that time the United States has further researched the issues and now believe that, because of A.R.S. § 13-901.01 and United States v. Robles-Rodriguez,  Alvarez-Lopez' prior conviction may not be a felony for purposes of U.S.S.G. § 2L1.2.  See United States Letter at 2.  In support of its new conclusion, the United States cites the present version of A.R.S. § 13-901.01: "Any person who is convicted of the personal possession or use of a controlled substance or drug paraphernalia is eligible for probation."[4]

## THE LEGAL STANDARD FOR ENHANCEMENTS

On disputed facts, the United States bears the burden of proving by a preponderance of evidence the propriety of a sentence enhancement.  See United States v. Guzman, 318 F.3d 1191, 1198 (10th Cir. 2003).  The district court cannot shift the burden of proof to the defendant on an enhancement.  See id. (noting that the district court improperly shifted the burden to the defendant when it found an enhancement was properly imposed, "because the court relied solely on hearsay statements and representations about police reports described second-hand in the [PSR]" and the "the government did not present any live witness or documentary evidence.").  Because the district court's interpretation of the sentencing guidelines presents a legal question, on appeal, the Court of Appeals will review the interpretation de novo.  See United States v. Plotts, 347 F.3d 873, 875 (10th

---

[4]The Court notes that the version of A.R.S. § 13-901.01 which was in effect at the time of the commission of Alvarez-Lopez' crime in 2001 did not include the crime of possession of drug paraphernalia.

Cir. 2003).

## ENHANCEMENT UNDER THE SENTENCING GUIDELINES

Under U.S.S.G. § 2L1.2(b)(1)(D), a prior conviction for a felony authorizes a 4-level increase in the offense level for the offense of Unlawfully Entering or Remaining in the United States.  U.S.S.G. § 2L1.2 provides:

§ 2L1.2. Unlawfully Entering or Remaining in the United States

(a) Base Offense Level: 8

(b) Specific Offense Characteristic

(1) Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after--

(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;

(C) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels;

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

U.S.S.G. § 2L1.2 (emphasis added).  Pursuant to U.S.S.G. § 2L1.2 Application Note 2, a "felony means any federal, state, or local offense punishable by imprisonment for a term exceeding one year."  See United States v. Ordonez-Navarrete, 154 Fed.Appx. 66, 69 (10th Cir. 2005)(holding that a defendant's conviction for third degree assault was a felony under 8 U.S.C. § 1326(b)(1) because the maximum sentence permitted under state law for that offense is 18 months, but under 8 U.S.C.

§ 1326(b)(1) is up to ten years' imprisonment); <u>United States v. Diaz-Bonilla</u>, 65 F.3d 875, 877

(10th Cir. 1995)(holding that, even if Colorado law defined third-degree assault as a misdemeanor,

the maximum penalty for it was up to two years so that it qualified, therefore, as a felony under

§2L1.2).  <u>But see United States v. Ordonez-Navarette</u>, 154 Fed.Appx. 66, 68 n. 1 (explaining that

<u>United States v. Diaz-Bonilla</u> "predated U.S.S.G. § 2L1.2, Application Note 2.").

<h2 style="text-align:center"><u>ARIZONA DRUG PARAPHERNALIA LAW</u></h2>

A.R.S. § 13-701 states, "[e]xcept as provided in § 13-604 the term of imprisonment for a

felony shall be determined as follows for a first offense: . . . For a class 6 felony, one year."  This

law has been effective in Arizona since 1994.  <u>See</u> Laws 1993, Ch. 255, § 10, eff. Jan. 1, 1994.  The

statute does not say that one year is the maximum sentence for a class six felony.

A.R.S. § 13-702 states that the sentences in § 13-701 can be increased or reduced in the

following manner:

> A. Sentences provided in § 13-701 for a first conviction of a felony, except those
> felonies involving the discharge, use or threatening exhibition of a deadly weapon
> or dangerous instrument or the intentional or knowing infliction of serious physical
> injury upon another or if a specific sentence is otherwise provided, may be increased
> or reduced by the court within the ranges set by this subsection. Any reduction or
> increase shall be based on the aggravating and mitigating circumstances contained
> in subsections C and D of this section and shall be within the following ranges: . . .
> .

|  | Minimum | Maximum. . . |
|---|---|---|
| 5.  For a class 6 felony | 6 months | 1.5 years |

A.R.S. § 13-702.01 sets forth the maximum imprisonment term if the trier of fact finds that at least

two aggravating factors from § 13-702 apply:

> A. Notwithstanding § 13-702, subsection A, if a person is convicted
> of a felony without having previously been convicted of any felony
> and if the trier of fact finds beyond a reasonable doubt that at least

-8-

two aggravating factors listed in § 13-702, subsection C apply, the court may increase the maximum term of imprisonment otherwise authorized for that offense up to the following maximum terms: . . .

C(18) Any other factor that the court deems appropriate to the ends of justice.

5.  For a class 6 felony                2 years

B.  Notwithstanding § 13-702, subsection A, if a person is convicted of a felony without having previously been convicted of any felony and if the court finds that at least two mitigating factors listed in § 13-702, subsection D apply, the court may decrease the minimum term of imprisonment otherwise authorized for that  offense down to the following minimum terms:

* * * *

5.  For a class 6 felony                4 months.

Hence, the minimum sentence is four months and the maximum is two years for a class 6 felony.

## PROPOSITION 200

Arizona Statute § 13-901.01, also known as Proposition 200, which became effective in 1996, requires judges to suspend imposition or execution of sentence, and place on probation, any person who is convicted of first- and second-time drug offenses of personal possession or use.  Not until 2003  was the statute amended to expressly include first-time offenders who possessed drug paraphernalia as well as controlled substance. The version of the statute that was in effect in 2001 states:

A.R.S. § 13-901.01 Probation for persons convicted of personal possession and use of controlled substances; treatment; prevention; education

A.  Notwithstanding any law to the contrary, any person who is convicted of the personal possession or use of a controlled substance as defined in section 36-2501 is eligible for probation.  The court shall suspend the imposition or execution of sentence and place such person on probation.

B.  Any person who has been convicted or indicted for a violent crime as defined in section -41-1604.15, subsection B, 13-604.04, is not eligible for probation as provided for in this section but instead shall be sentenced pursuant to the other provisions of chapter 34 of this title.

In United States v. Robles-Rodriguez, 281 F.3d 900 (9th Cir. 2002), the defendant pled guilty to re-entry after deportation in violation of 8 U.S.C. § 1236(a). See 281 F.3d at 901.  Under the guidelines, a person convicted of this offense is subject to a sentencing enhancement if he was convicted of a certain criminal offense prior to deportation.  See 281 F.3d at 901.  Before being deported, the defendant had been convicted of two drug-possession offenses under Arizona law.  See id.  The district court found that the Arizona convictions were aggravated felonies, permitting a 16-level sentencing enhancement under § 2L1.1(b)(1)(A) of the guidelines, and imposed a 30-month sentence on the defendant.    See 281 F.3d  at 901-902.  The defendant appealed, arguing that the two drug convictions were not aggravated felonies because they were governed by Proposition 200 (A.R.S. § 13-901.01). See 281 F.3d at 901-902.  Proposition 200 requires Arizona courts to sentence nonviolent persons convicted of first- and second-time drug possession offenses to probation and participation in a drug treatment program.  See 281 F.3d at 901-902. "Under Proposition 200, state trial courts have no discretion to sentence first-time offenders to incarceration." See 281 F.3d at 902. A trial court may, with regard to second-time offenders, as a condition of probation, impose up to one year of jail time, but may not impose a prison sentence. See id.    The United States Court of Appeals for the Ninth Circuit stated that, under Proposition 200, "state trial courts have no discretion to sentence first time offenders to incarceration." Id.  The Ninth Circuit concluded, therefore, that because the defendant's offenses were not punishable by more than one year of imprisonment under Proposition 200,  they did not meet the definition of a felony offense.  See 281 F.3d at 906.

In Arizona v. Estrada, 4 P.3d 438 (Ariz. Ct. App. 2000), the Arizona Court of Appeals held

-10-

that Proposition 200 requires probation for defendants convicted of possession of drug paraphernalia.  See 4 P.3d at 439.  In Arizona v. Estrada, a jury found Estrada guilty of possession or use of a dangerous drug and possession with intent to use drug paraphernalia.  See id.  At sentencing, the trial court was obligated to determine whether the probationary requirements of A.R.S. § 13-901.01 applied at all to Estrada's paraphernalia charges even though the statute did not specifically so state.  See id. at 384-85.  On the drug possession charge, the court initially placed Estrada on probation for three years believing that A.R.S. § 13-901.01 mandated probation.  On the drug paraphernalia charge, the trial court found that  A.R.S. § 13-901.01 was inapplicable and sentenced Estrada to a mitigated term of .75 years imprisonment.  See id. at 385.

On appeal in Arizona v. Estrada, Estrada argued that A.R.S. § 13-901.01 should also govern her conviction for possession of drug paraphernalia.  See id. at 386.  The Arizona Court of Appeals stated that "our case law has long cautioned that the courts must reject a literal statutory construction that would result in absurdity and defeat the purpose of the statute to be construed."  Id. at 387 (internal citations and quotations omitted).  The Court of Appeals agreed with Estrada that "this is an instance in which technical or literal construction would lead to absurdity and defeat the statutory purpose."  Id.  The Court of Appeals reasoned that "[t]he voters who insisted on probationary treatment for drug users could not have meant to mandate probation for possessing methamphetamine but permit prison for possessing a tube to smoke it in."  Id. at 388.  The Court of Appeals explained that such an interpretation would defeat the purpose enactment was meant to serve.  See id.

In November of 2001, the Supreme Court of Arizona affirmed the holding in Arizona v. Estrada.  See Arizona v. Estrada, 34 P.3d 356, 357 (Ariz. 2001).  In its opinion, the Supreme Court

consolidated several cases that dealt with this issue, and with the conflict between Divisions One and Two of the Arizona Court of Appeals. See id. The Supreme Court of Arizona stated that its primary objective in construing a ballot initiative, like A.R.S. § 13-901.01, was "to place reasonable interpretation of the intent of the electorate that adopted it." Id. at 359 (internal citations and quotations omitted). The Supreme Court acknowledged that, because the relevant statute does not specifically include drug paraphernalia, Proposition 200 does not expressly mandate probation for paraphernalia convictions. The Supreme Court stated, however, that sometimes the plain text of the statute, because of ambiguity or silence, fails to give effect to the legislature's obvious intent. See id. The Arizona Supreme Court held that it is irrational to permit incarceration for possession of minor paraphernalia and to prohibit incarceration for the more serious crime of actual drug possession or use. See id. Ultimately the Arizona Supreme Court held "that the probation eligibility provisions of Proposition 200 apply to convictions for the possession of items of drug paraphernalia associated solely with personal use by individuals also charged or could have been charged with simple use or possession of a controlled substance under the statute." Id. at 361.

## LAW REGARDING THE DESIGNATION OF A PRIOR CONVICTION AS A FELONY OR MISDEMEANOR FOR PURPOSES OF FEDERAL SENTENCING

The Supreme Court of the United States has indicated that the sentencing court must look at the elements of an offense under certain statutes to determine whether a conviction meets the definitions for specific enhancement. The Supreme Court has not, however, yet required the sentencing court to disregard possible enhancements when determining whether a prior conviction is a felony within the United States Guidelines. And the Court does not believe that the case law from the United States Courts of Appeals suggests that approach is required by the Sixth Amendment or otherwise.

1.      **UNITED STATES SUPREME COURT**

In Taylor v. United States, 495 U.S. 575 (1990), a defendant pled guilty to felon in possession of a firearm.  See id. at 578.  At the time of his plea, the defendant had four prior convictions for robbery, assault, and second-degree burglary under Missouri law.  See id. The United States sought to enhance his sentence under 18 U.S.C. § 924(e), which provides that a person who has three previous convictions for a violent felony or a serious drug offense, or both, shall be fined no more than $25,000 and imprisoned not less than 15 years.  See 495 U.S. at 578.  Taylor contended that his burglary convictions did not count for enhancement because they did not "involve conduct that presents a serious potential risk of physical injury to another."  Id. (quoting § 924(e)(2)(B)(ii))(internal quotations omitted).  The United States Court of Appeals for the Eighth Circuit held that the word "burglary" in § 924(e)(2)(B)(ii) meant burglary, however  state law defined that word.  See Taylor v. United States, 495 U.S. at 579.  The Supreme Court of the United States rejected the Eighth Circuit's view, because it seemed "implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction."  Id. at 590.

Some Circuits had ruled that § 924(e) incorporated the common-law definition of burglary, "relying on the maxim that a statutory term is generally presumed to have its common-law meaning." 475 U.S. at 593.  The Supreme Court noted that "[t]he problem with this view is that the contemporary understanding of 'burglary' has diverged a long way from its common law roots." Id. at 593.  Thus, "burglary in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes." 495 U.S. at 592.  The Supreme Court concluded that a person has been convicted of burglary for purposes of § 924(e) enhancement if he or she

commits burglary in the "generic sense."  495 U.S. at 598.  Burglary in the generic sense means "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  Id.  The Supreme Court "therefore reject[ed] [the United States'] view that Congress meant to include only a special subclass of burglaries, either those that would have been burglaries at common law, or those that involve especially dangerous conduct." Id.

The Supreme Court additionally considered "whether the sentencing court in applying § 924(e) must look only to the statutory definition of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes."  Id. at 600.  It noted the Circuits had "uniformly held that § 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."  Id.  The Supreme Court found the Circuits' logic persuasive.  See id.  The Supreme Court then directed sentencing courts to look at the charging paper or jury instructions to make sure they actually required the jury to find all the elements of generic burglary in order to convict the defendant.  See id. at 602.

In Shepard v. United States, 544 U.S. 13 (2005), the Supreme Court held that a sentencing court could not look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted and supported a conviction for generic burglary.  See id at 23 n.4. The Supreme Court held  there was no suggestion in United States v. Taylor "that its reasoning would not apply in plea cases." The Supreme Court went on to say that United States v. Taylor's "discussion of the practical difficulties specifically referred to prior guilty pleas."  Id.

The defendant, in Shepard v. United States, Shepard, was indicted under 18 U.S.C. §

922(g)(1) barring felons from possessing a firearm. See 544 U.S. at 16.  Shepard pled guilty.  See

id.  At sentencing for his crime, the United States argued that Shepard's prior convictions raised his

current sentencing range from 30 to 37 months to the fifteen-year minimum that § 924(e) requires,

relying on four prior convictions entered upon guilty pleas under a Massachusetts statute.  See 544

U.S. at 16.  The United States argued that each conviction represented a predicate offense Armed

Criminal Control Act ("ACCA"), 18 U.S.C.A. § 924(e)(1), offense of generic burglary.  See 544

U.S. at 16.  Furthermore, the United States argued for a wide evidentiary review by the court to

determine that the plea established the predicate offense.  See id.  The Supreme Court held that the

> [i]nquiry under the ACCA to determine whether a plea of guilty to burglary defined
> by a nongeneric statute necessarily admitted elements of the generic offense is
> limited to the terms of the charging document, the terms of a plea agreement or
> transcript of colloquy between judge and defendant in which the factual basis for the
> plea was confirmed by the defendant, or to some comparable judicial record of this
> information.

544 U.S. at 27.

In Almendrez-Torres v. United States, 523 U.S. 224 (1995), the defendant pled guilty to

violating § 1326, by reentering the United States after having been deported and after three

convictions for aggravated felonies.  See Almendarez-Torres v. United States, 523 U.S. at 225.  At

the sentencing, the defendant contended that he could be sentenced only to the penalty for an

offender without an earlier conviction.  See id. at 229.  The defendant contended that he could not

be sentenced to more than two years imprisonment, the maximum authorized for an offender with

no previous convictions.  See id. at 227. The United States Court of Appeals for the Fifth Circuit

rejected the defendant's argument, and held that "subsection (b)(2) [of 8 U.S.C. § 1326] is a penalty

provision that simply permits a sentencing judge to impose a higher sentence when the unlawfully

returning alien has a record of prior convictions."  Id. The Supreme Court noted that eight Circuits,

including the Fifth Circuit, had held that the enhancement "simply permits a sentencing judge to impose a higher sentence when the unlawfully returning alien has a record of prior convictions." 523 U.S. at 225.  The Supreme Court noted that the  United States Court of Appeals for the Ninth Circuit had reached the opposite conclusion.  See id.  The Supreme Court granted certiorari to resolve the differences among the Circuits.  See id.

The Supreme Court in Almendrez-Torres v. United States noted that the subject matter of 8 U.S.C. § 1326(a)(2) "is recidivism."  523 U.S. at 230.  It also noted "[t]hat subject matter -- prior commission of a serious crime -- is as typical a sentencing factor as one might imagine."  Id.  The Supreme Court noted "the lower courts have almost uniformly interpreted statutes (that authorize higher sentences for recidivists) as setting forth sentencing factors, not creating new crimes (at least where the conduct, in the absence of the recidivism, is independently unlawful.)"  Id.  The Supreme Court also "found no statute that clearly makes recidivism an offense element in such circumstances."  Id.

The Supreme Court in Almendrez-Torrez v. United States rejected the defendant's argument that recidivism must be treated as an element of his offense.  See id. at 247.  It noted that recidivism laws have a long tradition in the United States.  See id. at 243.  "Consistent with this tradition, the Court said long ago that a State need not allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was 'necessary to bring the case within the statute.'" Id. at 243 (emphasis in original)(quoting Graham v. West Virginia, 224 U.S. 616, 624 (1912)).  The Supreme Court rejected the defendant's argument that any significant increase in a statutory maximum sentence would trigger a "constitutional elements requirement" because "we would also find it difficult to reconcile any such rule with our

-16-

precedent holding that the sentencing-related circumstances of recidivism are not part of the definition of the offense for double jeopardy purposes." Almendarez-Torres v. United States, 523 U.S. at 247. The Supreme Court also noted that a rule requiring the prior conviction to be an element of the crime "would seem anomalous in light of existing case law that permits a judge, rather than a jury, to determine the existence of factors that can make a defendant eligible for the death penalty, a punishment far more severe than that faced by [the defendant] here." Id.

The Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), answered the question "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." Id. at 469. Apprendi pled guilty to second-degree possession of a firearm for an unlawful purpose and third-degree unlawful possession of an antipersonnel bomb. See id. at 470. The State reserved the right in the plea agreement to ask for an enhanced sentence on one of the counts of possession on the ground that it was committed with a biased purpose under a hate crime law. See id. Apprendi reserved his right to challenge the hate-crime sentence enhancement on the ground that it was unconstitutional. See id. The district court found by a preponderance of the evidence that the hate-crime enhancement applied. See id. at 471.

In Apprendi v. New Jersey, the Supreme Court characterized Almendarez-Torres v. United States, 523 U.S. 224 (1998), as an "exceptional departure." Apprendi v. New Jersey, 530 U.S. at 487. "Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated by allowing a judge to

determine a 'fact' increasing punishment beyond the maximum of the statutory range." Id. at 488. "Moreover, there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." Id. at 496.  The Supreme Court distinguished Almendarez-Torres v. United States: "Whereas recidivism 'does not relate to the commission of the offense' itself, New Jersey's biased purpose inquiry goes precisely to what happened in the 'commission of the offense.'" Id. (quoting  Almendarez-Torres v. United States, 523 U.S. at 230).

"Recidivism has long been recognized as a legitimate basis for increased punishment." Ewing v. California, 538 U.S. 11, 25 (2003).  The defendant argued that a sentence of twenty-five years to life under California's three-strike law was disproportionate and violative of the Eighth Amendment when his offense was felony grand theft for stealing approximately $1,200.00 worth of merchandise -- theft of three golf clubs.  See 538 U.S. at 28.  The Supreme Court weighed not only Ewing's current felony, "but also his long history of recidivism," because "[a]ny other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanction."  Id. at 29.  The Supreme Court found the sentence "justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by [Ewing]'s own long, serious criminal record."  Id.  at 29-30.

In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court considered whether imposition of an "exceptional" sentence of 90 months after making a judicial determination that the defendant acted with "deliberate cruelty" violated his Sixth Amendment right to trial by jury.  542 U.S. at 297.  Under Washington law, a sentence above the standard range may be imposed if the

judge finds substantial and compelling reasons justifying an exceptional sentence.  See id. at 299.

Pursuant to the plea agreement, Blakely's sentencing range was between 49 and 53 months.  See id.

at 300.  The judge rejected the state's recommendation and imposed an exceptional sentence of

ninety months, based on a statutorily enumerated ground for departure in domestic-violence cases.

See id.  The increase of Blakely's sentence was more than three years, to which he objected.  See

id.  The judge conducted a three-day bench trial, after which he issued findings of fact and adhered

to his initial determination that Blakely acted with deliberate cruelty.  See id.

In Blakely v. Washington, the Supreme Court applied the Apprendi v. New Jersey rule:

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Blakely v. Washington, 542 U.S. at 301.  The State argued that there was no Apprendi violation; the

relevant statutory maximum was the ten year maximum for class B felonies, because no exceptional

sentence may exceed that limit.  See Apprendi v. New Jersey, 542 U.S. at 303.  The Supreme Court

rejected that argument, because, for Apprendi purposes, the statutory maximum is "the maximum

sentence that a judge may impose solely based on the facts reflected in the jury verdict or admitted

by the defendant."  Blakely v. Washington, 542 U.S. at 303 (emphasis in the original).  "In other

words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after

finding additional facts, but the maximum he may impose without any additional findings."  Id.

(emphasis in the original).  The judge in Blakely's case could not have imposed the ninety month

sentence "solely on the basis of the facts admitted in the guilty plea."  Id.  Blakely's sentence was,

therefore, invalid for non-compliance with the Sixth Amendment.  See 542 U.S. at 305.

2.    **NINTH CIRCUIT**

The Ninth Circuit has held that recidivist enhancements must be separated from the actual offense when making a determination whether it is an aggravated felony conviction for purposes of enhancement under U.S.S.G. § 2L1.2.  See United States v. Corona-Sanchez, 291 F.3d 1201, 1210 (9th Cir. 2002), overruled on other grounds by United States v. Vidal, 426 F.3d 1011 (9th Cir.2005). The Ninth Circuit in United States v. Corona-Sanchez considered whether a petty theft committed by a previous offender was an aggravated felony under U.S.S.G. § 2L1.2.  See 426 F.3d at 1204-13. In United States v. Corona-Sanchez, the Ninth Circuit  first noted that Congress did not define the term "theft offense" in 8 U.S.C. § 1101(a)(43)(G).  See 426 F.3d at 1204.  Its first task, therefore, was to construe and define the meaning of that phase.  See id.

The Ninth Circuit has two different methodologies it uses, depending upon the nature of the "qualifying offense."  Id.  If the offense "is described in terms of a traditional common law crime, then [the Ninth Circuit has] defined the offense in terms of its generic, core meaning."  Id.  "If, on the other hand, the qualifying offense is described in terms that do not embrace a traditional common law crime, [the Ninth Circuit has] employed the ordinary, contemporary, and common meaning of the statutory words."  Id. (internal quotations omitted).

In United States v. Corona-Sanchez, the Ninth Circuit's "choice of methodology [was] clear because the contemporary crime of theft stems from the common law crime of larceny or theft."  Id. (internal quotations omitted).  After constructing the meaning of theft offense, the Ninth Circuit next determined "whether the state statute that formed the basis of the sentence enhancement qualifies as a theft offense."  Id. at 1205.  The Ninth Circuit then identified "the statute upon which the predicate offense was based."  Id. The only information available about the conviction came from

the information in the pre-sentence report, and no other court documents or evidence were presented

to the district court nor the Ninth Circuit concerning the offense.  See id. at 1206.

The presentence report in United States v. Corona-Sanchez described the qualifying offense

as "666/488 PC, Petty Theft with Prior Jail Term for a Specific Offense," but the Ninth Circuit found

the relevant offense was defined in California Penal Code § 484(a), the general California theft

statute.  Id. The Ninth Circuit explained that a conviction under § 484(a) for petty theft "does not

facially qualify as an aggravated felony for federal sentencing purposes under Taylor v. United

States, because it is not a theft offense for which the term of imprisonment is at least one year as

required by 8 U.S.C. § 1101(a)(43)(G)."  Id. at 1208. California Penal Code § 484(a) provides:

> Every person who shall feloniously steal, take, carry, lead, or drive away the
> personal property of another, or who shall fraudulently appropriate property which
> has been entrusted to him or her, or who shall knowingly and designedly, by any
> false or fraudulent representation or pretense, defraud any other person of money,
> labor or real or personal property, or who causes or procures others to report falsely
> of his or her wealth or mercantile character and by thus imposing upon any person,
> obtains credit and thereby fraudulently gets or obtains possession of money, or
> property or obtains the labor or service of another, is guilty of theft. In determining
> the value of the property obtained, for the purposes of this section, the reasonable
> and fair market value shall be the test, and in determining the value of services
> received the contract price shall be the test. If there be no contract price, the
> reasonable and going wage for the service rendered shall govern. For the purposes
> of this section, any false or fraudulent representation or pretense made shall be
> treated as continuing, so as to cover any money, property or service received as a
> result thereof, and the complaint, information or indictment may charge that the
> crime was committed on any date during the particular period in question. The hiring
> of any additional employee or employees without advising each of them of every
> labor claim due and unpaid and every judgment that the employer has been unable
> to meet shall be prima facie evidence of intent to defraud.

Cal. Penal Code § 484(a) (West 2001).  "Theft in other cases is petty theft."  Cal. Penal Code § 488

(West 2001).  California Penal Code  § 666 provides:

> Every person who, having been convicted of petty theft, grand theft, auto theft under
> Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony

> violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison.

Cal. Penal Code § 666 (West 2001). "Under California law, the maximum possible sentence for petty theft is six months."   United States v. Corona-Sanchez, 291 F.3d at 1208.

The defendant in United States v. Corona-Sanchez received a two-year sentence for his petty theft crime because of the application of California Penal Code § 666, "which provides a sentence enhancement for recidivists."   United States v. Corona-Sanchez, 291 F.3d at 1208.   The Ninth Circuit held that, "under the categorical approach, we must separate the recidivist enhancement from the underlying offense."   Id. at 1210.   "The maximum possible sentence for petty theft in violation of California Penal Code §§ 484(a) and 488, considered without reference to § 666, is six months." Id.   The Ninth Circuit then held that a conviction for petty theft in California is not an aggravated felony under 8 U.S.C. § 1101(a)(43)(G).   See United States v. Corona-Sanchez, 291 F.3d at 1206 (explaining that California Penal Code § 666 "does not describe a crime.").

In United States. v. Pimentel-Flores, 339 F.3d 959 (9th Cir. 2003), the defendant pled guilty to violations of 8 U.S.C. §§ 1326(a) and 1326(b)(1).   See 339 F.3d at 961.   The prior felony was a conviction under Washington law for "assault in violation of a court order."   Id.   The defendant received a thirty-day jail sentence, one year of probation, and a $1,000.00 fine for the assault offense.   See id.   The PSR in United States. v. Pimentel-Flores "did not identify the statute under which defendant had been convicted."   Id.   "Additionally, the government failed to provide any other judicially-noticeable documents indicating the statute of conviction."   Id.   The USPO determined that the defendant's assault conviction was a felonious crime of violence, authorizing

-22-

a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A).  See 339 F.3d at 961.  The defendant contended that "his core prior offense -- assault -- may not have been a felony and may have constituted negligent conduct or misdemeanor assault, in which case it would not be considered a 'crime of violence.'" Id. at 967.

The Ninth Circuit in United States v. Pimentel-Flores noted that "[w]e have held in the past that state sentencing enhancements raising misdemeanors to felonies cannot be considered in determining whether a prior conviction is an 'aggravated felony." Id. at 969.  "Instead, the court must examine the statute under which a defendant was convicted for his core offense."  Id. (citing United States v. Corona-Sanchez, 291 F.3d at 1209-10).  The Ninth Circuit held that a third-or fourth-degree assault did not qualify as a crime of violence under Taylor v. United States' categorical approach.  See United States. v. Pimentel-Flores, 339 F.3d at 969.  The Ninth Circuit reaffirmed its position in  United States v. Corona-Sanchez: "When the statute of conviction does not facially qualify as an aggravated felony under federal sentencing law, the sentencing court should have examined the record for documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes under the modified categorical approach."  United States. v. Pimentel-Flores, 339 F.3d at 969 n.11 (citing  United States v. Corona-Sanchez, 291 F.3d at 1211).  The Ninth Circuit remanded the case to the sentencing court with instructions that it "should determine on an open record under what statute defendant was convicted and whether his core prior offense was a felony that now qualifies as a 'crime of violence' within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii)." United States. v. Pimentel-Flores, 339 F.3d at 969.

In United States v. Moreno-Hernandez, 419 F.3d 906 (9th Cir. 2005), the Ninth Circuit

declined to apply the logic of  United States v. Corona-Sanchez to a case "where the sentencing

factor is based on the circumstances of the crime itself."  United States v. Moreno-Hernandez, 419

F.3d at 909.  In United States v. Moreno-Hernandez, the Ninth Circuit agreed with the district court

that the defendant's conviction was a felony for the purposes of sentencing enhancement when he

was charged with an assault that would normally be a misdemeanor under Oregon state law, but

which becomes a felony punishable by up to five years in prison when it is committed in the

presence of the victim's minor child.  See id. at 908, 909.  The Ninth Circuit admitted in United

States v. Moreno-Hernandez that "[w]hat the Corona-Sanchez court meant by 'enhancements' is

thus not absolutely clear." Id. at 911.  The Ninth Circuit acknowledged in  United States v. Moreno-

Hernandez that there is language in United States. v. Pimentel-Flores which suggests that United

States v. Corona-Sanchez is applicable to "all sentencing factors, not just those based on

recidivism."  United States v. Moreno-Hernandez, 419 F.3d at 912.  The Ninth Circuit stated "[i]t

is thus unlikely that the less-than-clear language of Pimentel-Flores, summarizing Corona-Sanchez,

was meant to go beyond the circumstances before the court in either of the two cases." United States

v. Moreno-Hernandez, 419 F.3d at 912.  "When legislatures have chosen to demarcate sentences

based on specific characteristics of the offense itself rather than on some aspect of the offender's

legal history, we believe the Corona-Sanchez 'core offense' concept does not apply, and that the

entire sentence, including its offense-based aggravating characteristics, must be factored into our

determination of whether or not it is a 'felony.'" United States v. Moreno-Hernandez, 419 F.3d at

913-14.  The Ninth Circuit concluded that the defendant's prior conviction under Oregon law for

assault and the aggravating factor of assault in the presence of the victim's minor child is a felony

because of its statutory maximum sentence of five years' imprisonment, and did not consider the

aggravating factor separately.  See id. at 914.

In United States v. Smith, 844 F.2d 793 (9th Cir. 1988)(Table), 1988 WL 33362, the defendant, Smith, contended principally that, because the predicate state crime was designated a misdemeanor, he does not stand convicted of a felony under the Firearm Owners' Protection Act. See 844 F.2d at *1-2.  In December 1982, Smith pleaded guilty in Arizona superior court to endangerment.  See id. at *1.  Imposition of sentence was suspended, and Smith was placed on probation for three years. See id.  Following the completion of Smith's probationary period, the endangerment charge was designated a misdemeanor on March 7, 1985. See id. at *1-2.

On appeal in United States v. Smith, Smith contended that, as a matter of federal law, he did not have a felony conviction.  See id. at *1.  The Ninth Circuit disagreed. See id.  A felony under 18 U.S.C. § 1202(a)(1) is "any offense punishable by imprisonment for a term exceeding one year, but does not include any offense (other than one involving a firearm or explosive) classified as a misdemeanor." Id.

The Ninth Circuit in United States v. Smith noted that, although the definition in 18 U.S.C. § 1202(a)(1) contains an exception for offenses that a state classifies as misdemeanors, the exception was inapplicable to Smith's case because the record was clear that Smith's predicate conviction involved a firearm. See id.  Smith also argued that the Firearm Owners' Protection Act precluded a finding that he was a convicted felon because the endangerment charge was designated a misdemeanor.  See 18 U.S.C. § 921(a)(20)(B); United States v. Smith, 844 F.2d at *1.  The Ninth Circuit found that the Firearm Owners' Protection Act did not help Smith, stating that, where the prior offense involves a firearm, "we look to state law solely to determine whether the maximum permissible prison term exceeds one year.  If so, the state conviction constitutes a felony for

purposes of 18 U.S.C. § 1202." Id. at *2 (quoting United States v. Houston, 547 F.2d 104, 106 (9th Cir. 1976)).  The Ninth Circuit then stated:

> Smith pleaded guilty in state court to the crime of endangerment, a class 6 open-ended offense.  The sentencing order designates the crime as a felony with the alternative designation, misdemeanor, crossed out.  The term of imprisonment for a class 6 felony is one and one-half years.  Ariz. Rev. Stat. Ann. § 13-701(B)5.  This sentence can be increased up to twenty-five percent or may be reduced up to fifty percent.  Ariz. Rev. Stat. § 13-702(A).  The maximum permissible prison term exceeds one year.  Therefore, the endangerment conviction constitutes a felony for purposes of 18 U.S.C. App. § 1202.

The applicable statute at the time of United States v. Smith indicated that the presumptive sentence for a class 6 felony was one-and-one-half years and the maximum sentence for a class 6 offense was also one-and-one-half years.  See A.R.S. § 13-701.

In United States v. Parry, 479 F.3d 722 (9th Cir 2007), Parry was convicted of being a felon in possession of a firearm, and of having been previously convicted of three serious drug offenses in violation of 18 U.S.C. § 922(g)(1) and § 924(e) along with several other crimes.  See 479 F.3d at 723.  Under the Armed Career Criminal Act of 1984, a defendant is subject to a mandatory sentence of fifteen years if the defendant has three of more prior convictions that qualify as "serious drug offenses." 18 U.S.C. § 924(e)(1).  The statute defines a serious drug offence as "an offense under State law, involving manufacturing, distributing, or possession with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." Id. at 924(e)(2)(A)(ii).  Parry conceded that one of his prior convictions was a serious drug offense.  See United States v. Parry, 479 F.3d at 724.  Parry challenged, however, whether his two convictions for delivery of methamphetamine were serious drug offense, stating that, under Oregon Sentencing Guidelines, they are not punishable by a maximum term of ten years or more as prescribed by law.  See id. Parry argued that, while the relevant Oregon statute provides

that such a felony, a class B felony, carries a maximum prison sentence of ten years,  no defendant

could ever be sentenced to ten years in prison for the delivery or manufacture of methamphetamine,

regardless of his criminal history, because the sentencing guidelines provide a maximum sentence

of ninety months.  See id.  The Ninth Circuit disagreed with Parry "hold[ing] that Blakely v.

Washington, 542 U.S. 296 (2004), did not change the definition of what constitutes a maximum

sentence under state law for the purposes of prosecution under 18 U.S.C. § 922(g)(1): the maximum

sentence is the statutory maximum sentence for the offense, not the maximum sentence available

in the particular case under the sentencing guidelines." United States v. Parry, 479 F.3d at 725-26.

In United States v. Murillo, 422 F.3d 1152 (9th Cir. 2005), the defendant was indicted in

federal court and charged with being a felon in possession of a firearm in violation of 18 U.S.C.  §

922(g)(1), which was premised on his prior convictions of harassment and unlawful possession of

a firearm in 1998.  See 422 F.3d at 1153.   Each of the defendant's prior crimes from 1998 were

considered class C felonies punishable by a term of imprisonment up to five years.   Under the

Washington Sentencing Guidelines, however, based on the defendant's seriousness level of III and

his Offender Score of 2 for his harassment conviction and 3 for his unlawful firearm possession

conviction, the defendant's actual maximum possible term of imprisonment was 12 months.  See id.

at 1153. The defendant argued that, according to United States v. Blakely, his indictment should be

dismissed, because he had not been convicted of any crimes for which he could have been punished

by a term exceeding one year.  See 422 F.3d at 1153.  In explaining its reasoning for its holding, the

Ninth Circuit outlined some of its prior decisions, ultimately concluding that the same principles

applied to this case.  "We repeatedly held prior to the Supreme Court's Blakely decision that in

determining whether a state conviction is punishable for more than one year's imprisonment for

purposes of a federal criminal statute predicated on a prior felony conviction or for federal sentencing purposes, we look to maximum penalty allowed by statute." Id. The Ninth Circuit went on to say that in United States v. Horodner, 922 F.2d 191 (9th Cir. 2004), it held that a defendant's prior California state conviction served as a predicate offense under the relevant statute, because the maximum statutory sentence was a term of four years, even though the defendant had only been sentenced to 365 days of imprisonment.   See United States v. Murillo, 422 F.3d at 1155. Furthermore, the Ninth Circuit referred back to its decision in United States v. Rios-Beltran, 361 F.3d 1204 (9th Cir. 2004), in which it held, for purposes of federal sentencing enhancement, that a defendant's prior Oregon state conviction was of "an aggravated felony, or a crime punishable by more than one year imprisonment under applicable stated or federal law, because the maximum statutory sentence was a term of five years, even though under the Oregon sentencing guidelines the defendant's actual maximum possible term of imprisonment was 90 days." United States v. Murillo, 422 F.3d at 1154 (internal citations omitted).  In United States v. Rios-Beltran, the Ninth Circuit stated:

> The actual sentence imposed on an individual for a prior conviction, or the actual
> sentence that potentially could have been imposed based upon the particular facts of
> the person's case, is not the relevant inquiry.  We look to the maximum penalty
> allowed by law in determining whether a prior conviction constitutes an aggravated
> felony under state law for purposes of U.S.S.G. §  2L2.2.

361 F.3d at 1208.  The defendant in United States v. Murillo argued that United States v. Blakely changed all this.  See 422 F.3d at 1154.  The defendant contended that "the maximum sentence a court may impose for a crime is defined by the maximum term that may be imposed based solely on the facts established by a guilty verdict."  Id.  The defendant went on to argue that, if no aggravating factors are pleaded and proved, the maximum sentence must be considered the

maximum range in the state's sentencing guideline grid rather than the maximum set by the state's applicable criminal statute.  See id.  The Ninth Circuit responded that "[United States v.] Blakely did not change the definition of what constitutes a maximum sentence  under state law for the purpose of prosecution under 18 U.S.C. § 922(g)(1)." 422 F.3d at 415.  Specifically, the Ninth Circuit held that, "the maximum sentence is the statutory maximum sentence for the offense, not the maximum sentence available in the particular case under the sentencing guidelines." Id.  The Ninth Circuit also noted that the defendant's argument, which tried to extend Apprendi v. New Jersey and United States v. Blakely to modify a crime's potential punishment that makes the crime a predicate offense under 18 U.S.C. 922(g)(1), was incorrect, because the Sixth Amendment concerns in those cases were not present in United States v. Murillo. See 422 F.3d at 1155.

In Larfarga v. Immigration and Naturalization Service, 170 F.3d 1213 (9th Cir. 1999), the Ninth Circuit denied the defendant's request for voluntary departure from the United States on the basis that she had committed a prior crime of moral turpitude and that the petty offense exception could not apply because the maximum possible penalty for which she was convicted exceeded imprisonment for one year. See 170 F.3d at 1214.  In 1993, Lafarga had pled guilty in Arizona to theft classified as a class 6 undesignated, nondangerous, nonrepetitive offense.  See 170 F.3d at 1214. For her crime, she was placed on probation for 18 months.  See id.  After she successfully completed her probation, the state court, in its final judgment, designated her offense as a misdemeanor opposed to a felony.  See id.

The Board of Immigration Appeals denied her request for voluntary departure reasoning that Lafarga's undesignated sentence was akin to an indeterminate sentence.  See id. at 1215.  The Ninth Circuit stated that when applying the petty offense exception to an indeterminate sentence, it is

proper for the Board of Immigration Appeals to consider the maximum sentence possible.  See id. The Board of Immigration Appeals decided that, because Lafarga's conviction could have been designated as either a felony with a maximum sentence of one-and-a-half years or a misdemeanor with a maximum sentence of six months, it should be designated as a felony.  See id.

The Ninth Circuit in Lafarga v. Immigration and Naturalization Services held that the Board of Immigration Appeals incorrectly considered Larfarga's sentence as an indeterminate sentence. See id.  The Ninth Circuit stated that an indeterminate sentence and an undesignated sentence are distinct.  See id.  "An indeterminate sentence is a sentence to imprisonment for the maximum period defined by law, subject to termination by the parole board or other agency at any time after service of the minimum period."  Id. (internal quotations omitted).  Lafaraga, on the other hand, was given an undesignated probationary sentence and after successful completion of her probation, the judge determined that her offense should be designated a misdemeanor.  See id. at 1216.  The Ninth Circuit ultimately held that, because the maximum possible punishment for a misdemeanor under Arizona law was six months, Lafarga's offense properly fell within the petty offense exception.  See id.

### 3.   TENTH CIRCUIT

In United States v. Hernandez-Garduno, 460 F.3d 1287 (10th Cir. 2006), the Tenth Circuit noted that the "definition of 'felony' for purposes of §2L1.2(b)(1)(A)(ii) includes any offense punishable by more than one year of imprisonment, irrespective of the actual sentence imposed." 460 F.3d at 1293 (emphasis in the original).  Three criminal appeals were consolidated and presented "the question whether previous Colorado misdemeanor convictions for third-degree assault constitute crimes of violence under § 2L1.2 of the United States Sentencing Guidelines when the defendants were sentenced to less than one-year imprisonment."  Id. at 1289.  The defendants argued

"that § 2L1.2 defines a 'felony' for the purposes of crime of violence enhancement in reference to 8 U.S.C. § 1101."  Id. at 1292.  Further, "[b]ecause 8 U.S.C. § 1101(a)(43)(F) limits aggravated felonies to crimes of violence 'for which the term of imprisonment [is] at least one year,' the defendants argue[d] that § 2L1.2 of the Sentencing Guidelines also includes such a limitation, notwithstanding the application note that defines 'felony' as an offense 'punishable by imprisonment for a term exceeding one year.'"  Id. (quoting U.S.S.G. § 2L1.2 n.2)(alterations and emphasis in the original).    The Tenth Circuit held that "[t]he definition of 'felony' for purposes of § 2L1.2(b)(1)(A)(ii) includes any offense punishable by more than one year of imprisonment, irrespective of the actual sentence imposed."  United States v. Hernandez-Garduno, 460 F.3d at 1293.  It then determined that the defendants' convictions under Colorado law for third-degree assault "were felonies under § 2L1.2(b)(1)(A), even thought the convictions may not have qualified as aggravated felonies under 8 U.S.C. § 1101(a)(43)(F)," because Colorado law "provides for a term of imprisonment up to 18 months."  United States v. Herandez-Garduno, 460 F.3d at 1293.

The Tenth Circuit has employed the Taylor v. United States' categorical approach to determine whether a prior conviction is an "aggravated felony."  The Tenth Circuit employed the Taylor v. United States' categorical approach to determine whether "a state misdemeanor conviction for attempted riot is an aggravated felony for purposes of 8 U.S.C. §1101(a)(43)."  United States v. Hernandez-Rodriguez, 388 F.3d 779, 781 (10th Cir. 2004); 8 U.S.C. § 1101(a)(43)(listing numerous categories of offenses which count as an "aggravated felony" in subsections (A) through (U)).  The defendant "pleaded guilty to illegal reentry into the United States in violation of 8 U.S.C. § 1326."  United States v. Hernandez-Rodriguez, 388 F.3d at 781. The defendant contended that the district court had "erred in imposing an eight-level enhancement for previous conviction of an aggravated

felony under United States Sentencing Guideline Manual § 2L1.2(b)(1)(C), because the offense meets the 'crime of violence' definition in 18 U.S.C. § 16(a)." United States v. Hernandez-Rodriguez, 388 F.3d at 781.  8 U.S.C. § 1101(a)(43)(f) defines "aggravated felony" as meaning "a crime of violence (as defined in section 16 of Title 18 . . . ) for which the term of imprisonment is at least one year." United States v. Hernandez-Rodriguez, 388 F.3d at 781. The defendant received 365 days of imprisonment for the attempted riot conviction, with 305 days suspended.  See id.

The Tenth Circuit in United States v. Hernandez-Rodriguez determined that the attempted riot conviction satisfied 8 U.S.C. § 1101(a)(43)(f), so then it "continue[d] down the path to 18 U.S.C. § 16" to determine if the conviction was a crime of violence.  United States v. Hernandez-Rodriguez, 388 F.3d at 781. The Tenth Circuit explained: "Because Mr. Hernandez-Rodriguez's conviction for attempted riot is a misdemeanor under Utah law, it cannot qualify as a crime of violence under Section 16(b).  Thus our operative concern -- whether this somewhat unique Utah misdemeanor is an aggravated felony for guideline purposes -- turns on whether this offense has an element requiring some kind of use of force against a person or property." United States v. Hernandez-Rodriguez, 388 F.3d at 781. (emphasis added).  "To decide whether 'attempted riot' is a crime of violence under § 16(a), we apply the categorical approach set forth in Taylor v. United States . . . ." United States v. Hernandez-Rodriguez, 388 F.3d at 781.  "In determining whether the elements of an offense meet the guideline formulation of an aggravated felony, we look to the category of crime defined by that offense." Id.  The Tenth Circuit then looked at the Utah statute to determine whether the defendant was convicted of a crime of violence, because "in this situation, as in other cases interpreting ambiguous statutes, our categorical approach allows us to look to the charging paper and judgment of conviction in order to determine if the actual offense the defendant

was convicted of qualifies as a crime of violence." <u>Id.</u> at 783 (internal quotations omitted).  It then

examined the Utah law under which the defendant was convicted, to determine if it was a crime of

violence:

> The Utah Information alleged that [the defendant] committed a third-degree felony
> by causing a riot in violation of § 76-9-101, because 'said defendant':
>
> * * * *
>
> engaged in tumultuous or violent conduct and thereby knowingly or recklessly
> created a substantial risk of causing public alarm and/or
>
> * * * *
>
> [the victim] suffered bodily injury. . . .
>
> We agree with the district court's conclusion that the charging document and plea
> support a finding that this conviction under § 76-9-101 is a crime of violence.

<u>Id.</u> at 783.  The Tenth Circuit noted that "[t]he charging document and the judgment unequivocally

establish that [the defendant's] conviction for a violation of the attempted riot statute was 'an offense

that has as an element the use, attempted use, or threatened use of physical force against the person

or property of another.'" <u>Id.</u> at 784 (quoting 18 U.S.C. § 16(a)).  That conviction "therefore qualifies

as an aggravated felony within the meaning of guideline § 2L1.2."  <u>United States v. Hernandez-

Rodriguez</u>, 388 F.3d at 784.

The Tenth Circuit also employed the <u>Taylor v. United States</u>' categorical approach in a case

involving the issue whether joyriding was an aggravated felony that would authorize an 8-level

enhancement under U.S.S.G. § 2L1.2(b)(1)(C).  <u>See</u> <u>United States v. Elizalde-Altamirano</u>, 226

Fed.Appx. 846, 847-848 (10th Cir. 2007).  Elizalde-Altamirano "pleaded guilty to illegal re-entry

of a deported alien, in violation of 8 U.S.C. § 1326."  <u>United States v. Elizalde-Altamirano</u>, 226

Fed.Appx. at 847.  The district court followed the recommendation in the PSR, and classified the

defendant's prior Utah misdemeanor joyriding conviction as an aggravated felony.  See id.  "As a result, the district court imposed an eight-level sentencing enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(C)."  United States v. Elizalde-Altamirano, 226 Fed.Appx. at 847.  That guideline calls for an 8-level increase "where a defendant previously was deported following a conviction for an aggravated felony."  Id.  Under the guidelines, the term "aggravated felony" "has the same meaning given that term by Section 101(a)(43) of the Immigration and Nationality Act."  United States v. Elizalde-Altamirano, 226 Fed.Appx. at 847.  Under the Immigration and Nationality Act ("INA"), § 101(a)(43)(g), "the term 'aggravated felony' includes 'a theft offense (including the receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."  United States v. Elizalde-Altamirano, 226 Fed.Appx. at 847 (alterations in the original). The Tenth Circuit was faced with the question "whether the term 'theft offense' as employed by the INA includes the crime of joyriding as defined by Utah law, such that joyriding must be labeled an 'aggravated felony' warranting the eight-level sentencing enhancement under § 2L1.2(b)(1)(C)" where the "[d]efendant previously received a one-year suspended sentence following his conviction in Utah state court for joyriding, a class A misdemeanor."  United States v. Elizalde-Altamirano, 226 Fed. Appx. at 847.  (emphasis added). To answer the question whether a conviction for misdemeanor joyriding was an aggravated felony under the INA, such that enhancement under § 2L1.2(b)(1)(C) was warranted, the Tenth Circuit used the Taylor v. United States' categorical approach:

> Under the INA, a misdemeanor conviction may qualify as an aggravated felony if a one-year sentence is imposed, even if that sentence is entirely suspended. Thus, the question facing this court is whether the term "theft offense" as employed by the INA includes the crime of joyriding as defined by Utah law, such that joyriding must be labeled an "aggravated felony" warranting the eight-level sentencing enhancement under§ 2L1.2(b)(1)(C).

United States v. Elizalde-Altamirano, 226 Fed.Appx. at 847.  Using that approach, the Tenth Circuit

held that joyriding fits within the definition of a theft offense within the meaning of the federal generic definition, even though joyriding is a class A misdemeanor under Utah state law.  See id. The defendant's joyriding conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(G).  See United States v. Elizalde-Altamirano, 226 Fed.Appx. at 849.  See also United States v. Perez-Vargas, 414 F.3d 1282, 1284 (10th Cir. 2005)(applying Taylor v. United States' categorical approach to determine whether a conviction falls into the category of "crime of violence" which is an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G)).

In United States v. Nava-Zamora, 195 Fed.Appx. 801, 803 (10th Cir. 2006), the defendant challenged his 27-month sentence that resulted, in part, from a prior state conviction for drug trafficking.  See 195 Fed.Appx. at 802.  The defendant pleaded guilty to illegal reentry by a felon following deportation, in violation of 8 U.S.C. § 1326(a)(1)(2).  The USPO recommended a 12-level enhancement based upon the defendant's prior conviction for unlawful delivery of a controlled substance.  See United States v. Nava-Zamora, 195 Fed.Appx. at 802.  The defendant objected to the PSR, and "argued that his prior Texas conviction for drug trafficking was a misdemeanor, not a felony, and therefore the 12-level enhancement provided for in U.S.S.G. § 2L1.2(b)(1)(B) [did] not apply."  United States v. Nava-Zamora, 195 Fed.Appx. 801.  U.S.S.G. § 2L1.2 authorizes a 12-level enhancement "if the defendant was previously convicted 'for a felony drug trafficking offense for which the sentence imposed was 13 months or less."  United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting U.S.S.G § 2L1.2).  The defendant argued "that his Texas conviction for drug trafficking was not a felony."  United States v. Nava-Zamora, 195 Fed.Appx. at 803.

The Tenth Circuit in United States v. Nava-Zamora explained that: "A 'felony' is 'any federal, state, or local offense punishable by imprisonment for a term exceeding one year."  Id.

(quoting U.S.S.G. § 2L1.2 cmt. n. 2).  The Tenth Circuit noted that "[t]he judgment in the prior case reveals that [the defendant] was convicted of a 'state jail' felony, which is an offense punishable by a period of confinement 'of not more than two years or less than 180 days.'" United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting Tex. Penal Code § 12.35(a)).  The defendant argued that his conviction was a misdemeanor under Texas law, because under Texas law, "[a] court may punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for Class A misdemeanor if, after considering the gravity and circumstances of the felony committed and the history, character, and rehabilitative needs of the defendant, the court finds that such punishment would best serve the ends of justice."   United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting Tex. Penal Code § 12.44).  The Tenth Circuit noted, that "[n]evertheless, 'a crime remains a felony even if punished as a misdemeanor under § 12.44'" United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting United States v. Rivera-Perez, 332 F.3d 350, 352 (5th Cir. 2003)).  "[A]ccordingly, . . . the District Court properly applied the 12-level enhancement provided for in U.S.S.G. § 2L1.2(b)(1)(B)."  United States v. Nava-Zamora, 195 Fed.Appx. at 803.

In United States v. Diaz-Bonilla, 65 F.3d 875, 875-78 (10th Cir. 1995), the Tenth Circuit held that the defendant's conviction for assault for which he was sentenced to two years with one year suspended was a felony and therefore the district court's application of a 4-level enhancement under 2L1.2(b)(1) was authorized. The defendant in United States v. Diaz-Bonilla was convicted of "Unlawful Entry of a Previously Deported Alien, in violation of 8 U.S.C. § 1326." 65 F.3d at 876. The defendant had a previous conviction under state law.  See id.   The defendant objected to the PSR's recommendation for a 4-level enhancement under § 2L1.2(b)(1), because his previous conviction under Colorado law for a third-degree assault was defined as a misdemeanor under state

-36-

law.  See United States v. Diaz-Bonilla, 65 F.3d at 876.  "The maximum penalty for [third-degree

assault] is up to two years in the county jail."  Id.  The United States argued that, "for purposes of

uniformity in application of the Guidelines, the term "a conviction for a felony" in § 2L1.2(b)(1)

should be defined by reference to federal law."  United States v. Diaz-Bonilla, 65 F.3d at 877.  The

Tenth Circuit held "that for the purposes of § 2L1.2, a felony conviction is defined as a conviction

under a statute, state or federal, with a statutory maximum penalty in excess of one year."  United

States v. Diaz-Bonilla, 65 F.3d at 877.  The Tenth Circuit held the district court properly applied

a 4-level enhancement to the defendant's sentence under § 2L1.2.  See United States v. Diaz-Bonilla,

65 F.3d at 877-78.

      In United States v. Ordonez-Navarette, 154 Fed.Appx. 66 (10th Cir. 2004), the Tenth Circuit

reiterated its holding in United States v. Diaz-Bonilla.  The Tenth Circuit noted that  United States

v. Diaz-Bonilla "predated U.S.S.G. § 2L1.2, Application Note 2," but still "recognize[d] that Diaz-

Bonilla was interpreting the term 'felony' for the purpose of a sentencing guideline enhancement."

United States v. Ordonez-Navarette, 154 Fed.Appx. at 68, 68 n.1.  The Tenth Circuit also held "that

its reasoning applies to the question of just what constitutes a felony under 8 U.S.C. § 1326(b)(1)."

United States v. Ordonez-Navarette, 154 Fed.Appx. at 68, 68 n.1.  It explained "[t]he fact that

Colorado classifies a conviction for Third Degree Assault as a Class I misdemeanor is not

controlling.  What is controlling is that a conviction in Colorado carries a maximum sentence of 18

months imprisonment."  United States v. Ordonez-Navarette, 154 Fed.Appx. at 68, 68 n.1.

      The Tenth Circuit dealt with the  issue of classifying a prior conviction as a felony or a

misdemeanor in United States v. Place, 561 F.2d 213, 214 (10th Cir. 1977).  Place pled guilty to

grand theft under the California Penal Code in January of 1971.  See id.  In February of that year,

he was granted probation for five years on the condition that he spend one year in county jail.  See id.

In June of 1975, Place filled out a 4473 Treasury Form in connection with his purchase of an automatic pistol.  See 561 F.2d at 214.  The form included a question asking whether he had been convicted in any court of any crime punishable by imprisonment for a term exceeding one year.  See id.  Place answered no to that question.  See id.

Place was then convicted of knowingly making a false written statement in connection with acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) and § 924(a). The defendant argued that he had been previously convicted of a misdemeanor, not a crime. See 561 F.2d at 214.  Place stated that, under the California Penal Code, "when a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment  in the county jail, it is a misdemeanor for all purposes" after a judgment imposing a punishment other than imprisonment in state prison.  Id. at 214. The Tenth Circuit affirmed the conviction stating that, at the time of Place's conviction, grand theft was a crime punishable in the state prison for not more than ten years. See United States v. Place, 561 F.2d at 215.  Furthermore, the Tenth Circuit stated that "the only purpose in looking to state law is to determine the maximum penalty which could have been imposed . . . . Having here determined that the maximum penalty which could have been imposed on Place exceeded one year, the investigation into state law is exhausted . . ." See id.

In a more recent case, the Tenth Circuit held that, because the sentencing court could not have imposed a sentence greater than one year, the defendant's state conviction was not a felony for the purposes of the federal sentencing guidelines.  See United States v. Plakio, 433 F.3d 692, 695 (10th Cir. 2005).  Under a Kansas statute, Plakio's drug offense had a severity level of 8, nonperson

felony, which allowed for a range of possible sentences between 7 and 23 months depending on the defendant's criminal history.  See id. at 694.  Plakio's scores exposed him to a presumptive sentencing range of nine to eleven months.  He received an eleven month suspended sentence and was placed on probation. See id.  The Kansas statutes allowed imposition of a term beyond the maximum specified in the appropriate sentence grid box based upon a court finding the existence of one or more aggravating factors.  See id. at 694-95.

The Tenth Circuit in United States v. Plakio stated that "ordinarily the mere possibility of an upward departure, (beyond one year) would render Plakio's conviction punishable by a term exceeding one  year regardless of the actual sentence received." Id. at 695 (citing United States v. Norris, 319 F.3d 1278, 1281-82 (10th Cir. 2003)(holding that the possibility of an upward departure under Kansas Statute Annotated   § 21-4719(b)(2) qualifies an offense as one punishable by imprisonment for a term exceeding one year for purposes of  § 922(g)(1) even though defendant's maximum presumptive sentence was less than one year and no upward departure was imposed).  The Tenth Circuit went on to say, however, that on June 26, 2000, the United States Supreme Court rendered it decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), which the Kansas Supreme Court applied to limit the ability of Kansas Courts to depart upward from the presumptive statutory sentence.  See United States v. Plakio, 433 F.3d at 695.  From June 26, 2000 to June 6, 2002 when Kansas implemented its new sentencing scheme, sentences in Kansas were limited to the maximum presumptive sentence. See id.

The Tenth Circuit  held, therefore, that Plakio's offense, the sentencing of which occurred on May 9, 2001, never qualified as a felony for purposes of the sentencing guidelines, because he was never subject to a sentence greater than a year under Kansas law.  See id.  "Because the

sentencing court could not have imposed a sentence greater than one year, Plakio's state conviction

was not a felony for purposes of the federal sentencing guidelines." Id. (citing United States v.

Place, 561 F.2d at 215).  The Tenth Circuit stated that the district court's concern that Plakio's

argument allowed a felony conviction under guidelines to be determined by state law peculiarities

was "unfounded." Id. at 695-96.  The Tenth Circuit explained that, "[w]hile it is true that we have

declined to look at state law for defining felonies under the sentencing guidelines, such cases

involved rejecting the terminology or nominclature . . . preferring instead to look at the substance

of the offense." Id. at 696 (internal citations omitted).  The Tenth Circuit continued:

> This is precisely what the sentencing guidelines direct us to do by requiring us to
> evaluate the maximum possible sentence under state law and not whether the offense
> is labeled a felony or whether the sentence imposed actually exceeded one year.
> Additionally, the district court had to first look to the Kansas provision setting forth
> the sentencing range of seven to twenty-three months for a level 8 offense (but not
> considering the criminal history category which limits the range to eight to eleven
> months) in order to qualify Plakio's offense as a felony.  We cannot look at a portion
> of state law to determine that the offense constituted a felony and then decry the use
> of state law standards as a threatening inconsistency.  In any event, although we have
> previously noted the importance of uniformity in sentences as a consideration in
> interpreting guidelines,  . . . such considerations do not trump the constitutional
> infirmities recognized by Apprendi and applied to Kansas sentencing scheme by
> Gould.

Id. at 696.  The Tenth Circuit also stated that it was not persuaded by the dissent's opinion which

stated that for a crime to be punishable for a term exceeding one year, there is no need to look at the

maximum sentence the individual defendant could receive.  See id. at 697.  The majority stated

several reasons for its disagreement with the dissent: (i) the dissent's opinion is contrary to the Tenth

Circuit's prior opinions, which focus on the particular defendant; (ii) in this case, the dissent's

approach disregards the internal component of criminal history in the Kansas sentencing scheme;

(iii) the dissent ignores that a crime must have an actor and that the state may tie the characteristics

of the actor to the maximum punishment; and (iv) uniformity in sentencing is not advanced when there is no possible way a defendant could have committed a felony given the state's punishment scheme.  See id. at 697.

## ANALYSIS

Alvarez-Lopez objects, pursuant to U.S.S.G. § 2L1.2(b)(1)(D), to the application of a 4-level enhancement in paragraph 13 of the PSR.  Alvarez-Lopez contends that the Possession of Drug Paraphernalia conviction does not meet the Guideline definition of a "felony." Amended Objection, at 1-2.  Alvarez-Lopez' state conviction is a felony under the Guidelines only if it was punishable by imprisonment for more than one year.  See United States v. Robles-Rodriguez, 281 F.3d at 903-905; United States v. Urias-Escobar, 281 F.3d at 167-168.

Alvarez-Lopez asserts that Arizona law punishes possession of drug paraphernalia, first offense, with a maximum term of imprisonment of up to one year.  See Amended Objection, at 2; A.R.S. §§ 13-3415 and 13-701.  Alvarez-Lopez contends that, as a class 6 felony, the maximum term of imprisonment the state court could have imposed was one year.  See Amended Objection, at 2; A.R.S. § 13-701.  Alvarez-Lopez argues that, because the maximum term of imprisonment the Arizona court could have imposed for possession of drug paraphernalia was up to one year, it cannot be classified as a felony under U.S.S.G. § 2L1.2(b)(1)(D) and therefore a 4-level increase in offense level is not justified. See id. at 2.

## I.     THE COURT WILL NOT EMPLOY A TAYLOR V. UNITED STATES APPROACH IN DETERMINING WHETHER ALVAREZ-LOPEZ' PRIOR CONVICTION IS A FELONY.

The Tenth Circuit has not yet addressed the issue whether a 4-level enhancement under U.S.S.G. § 2L1.2(b)(1)(D) would be authorized if it were based upon a conviction for Possession

of Drug Paraphernalia, a class 6 felony under Arizona law.  See A.R.S. § 13-3415.  The Tenth

Circuit has used the Taylor v. United States' categorical approach in cases to determine whether

defendants' prior convictions are "aggravated felonies" for sentencing enhancement.  See United

States v. Elizalde-Altamirano, 226 Fed.Appx. at 847-48 (using Taylor v. United States' categorical

approach to determine whether a defendant's prior state conviction for joyriding that is classified

as a misdemeanor under state law for which he received a one-year suspended sentence is an

aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C) and Section 101(a)(43) of the Immigration and

Nationality  Act); United States v. Perez-Vargas, 414 F.3d at 1284 (applying Taylor v. United

States' categorical approach to determine whether a conviction falls into the category of "crime of

violence" which is an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G))); United States v.

Hernandez-Rodriguez, 388 F.3d at 781-84 (using Taylor v. United States' categorical approach to

determine whether a conviction for attempted riot is an aggravated felony for § 2L1.2(b)(1)(C),

because the offense meets the crime of violence definition in 18 U.S.C. § 16(a) and 8 U.S.C. §

1101(a)(43)(f) when under state law it was classified as a misdemeanor).  The Tenth Circuit has not

used Taylor v. United States' categorical approach to determine whether a previous conviction under

state law is a felony authorizing a sentencing enhancement.  See  United States v. Hernandez-

Garduno, 460 F.3d at 1293 (holding that the defendants' misdemeanor convictions under Colorado

state law for third-degree assault were felonies for purposes of §2L1.2(b)(1)(A)(ii), when they were

sentenced to less than one year imprisonment, because Colorado law provides for a term of

imprisonment up to 18 months for that offense); United States v. Nava-Zamora, 195 Fed.Appx. at

803 (holding that the defendant's prior conviction for drug trafficking under Texas law was a felony

under U.S.S.G. § 2L1.2(b)(1)(B) because it is an offense punishable by a period of confinement up

to two years, even if a Texas court could punish that offense as a misdemeanor under Texas law); United States v. Ordonez-Navarette, 154 Fed.Appx. at 68 (holding that, in determining what constitutes a felony under U.S.C. § 1326(b)(1), "[t]he fact that Colorado classifies a conviction for Third Degree Assault as a Class I misdemeanor is not controlling. What is controlling is that a conviction in Colorado carries a maximum sentence of 18 months imprisonment."); United States v. Diaz-Bonilla, 65 F.3d at 875-78 (defendant's conviction for assault for which he was sentenced to two years with one year suspended was a felony under § 2L1.2(b)(1), even if defined as a misdemeanor under Colorado law, because the maximum penalty for that offense is up to two years in the county jail). See United States v. Ordonez-Navarette, 154 Fed.Appx. at 68 n. 1 (explaining that United States v. Diaz-Bonilla "predated U.S.S.G. § 2L1.2, Application Note 2.").

In Taylor v. United States, the Supreme Court was attempting to determine whether prior convictions were for a "violent" felony. The Supreme Court decided that, in applying 18 U.S.C. § 924(c), the court must first look at the statutory definition of the prior offense to determine whether the defendant was actually convicted of committing violence. The issue here is not whether the prior offense was actually a violent crime, but whether it was a felony. There is nothing in Taylor v. United States that suggests the sentencing court needs to look at the elements of a prior felony to determine whether the felony is a misdemeanor with an enhancement for aggravating factors. The opinion in Taylor v. United States tells the sentencing court what to look to in determining whether the crime was a violent felony; the issue here is whether the court must separate the prior crime into its misdemeanor component and its enhancement component. Because Taylor v. United States does not help the Court address that substantive issue, the Court will not use that case to dissect the prior conviction into its misdemeanor and enhancement components.

-43-

## II.     STATE-LAW CATEGORIZATION OF ALVAREZ-LOPEZ' CONVICTION IS NOT DETERMINATIVE.

The United States, in its letter to the Court, states that, under Arizona law, Alvarez-Lopez' conviction is likely a felony.  See United States Letter, at 3.  Ms. Brawley cites A.R.S. § 13-702, reasoning that, because Alvarez-Lopez' conviction was never designated as a misdemeanor, it is regarded as a felony.  See United States Letter at 3; A.R.S. § 13-702.  While Alvarez-Lopez' conviction may be categorized as a felony under state law, such categorization is not determinative for the purpose of categorization in this case.  On several occasions, the Tenth Circuit has held that the state-law categorization of a crime is not determinative in classifying a crime as a felony or misdemeanor for purposes of U.S.S.G. § 2L1.2(b)(1).  See United States v. Ordonez-Navarette, 154 Fed.Appx. at 68 (holding that, in determining what constitutes a felony under U.S.C. § 1326(b)(1), "[t]he fact that Colorado classifies a conviction for Third Degree Assault as a Class I misdemeanor is not controlling.  What is controlling is that a conviction in Colorado carries a maximum sentence of 18 months imprisonment."); United States v. Diaz-Bonilla, 65 F.3d at 875-78 (defendant's conviction for assault for which he was sentenced to two years with one year suspended was a felony under § 2L1.2(b)(1), even if defined as a misdemeanor under Colorado law, because the maximum penalty for that offense is up to two years in the county jail).  The state categorization of Alvarez-Lopez' conviction as a felony is not determinative in this case.

## III.     PROPOSITION 200 APPLIES TO ALVAREZ-LOPEZ' PRIOR CONVICTION.

The Court has determined that Proposition 200 covers Alvarez-Lopez' prior conviction.  See A.R.S. § 13-901.01. The language of the statute in effect at the time of Alvarez-Lopez' prior conviction did not include the crime possession of "drug paraphernalia," but rather included only the crime possession of a "controlled substance." A.R.S. § 13-901.01.  Furthermore, a specific

amendment was made to A.R.S. § 13-901.01 after 2001 to include the specific offense of possession of drug paraphernalia. In the United States' Letter to the Court, the United States conceded that, based on Proposition 200 as well as United States v. Robles-Ramirez, Alvarez-Lopez' conviction may not be a felony.  See United States Letter at 3-4.  In its letter, the United States quoted Proposition 200 to state: "Any person who is convicted of the personal possession or use of a controlled substance or drug paraphernalia is eligible for probation." United States Letter at 3. Through its research the Court determined that this version of the statute was not adopted until after 2001.   The prior versions of the statute did not specifically include a conviction for drug paraphernalia.  Alvarez-Lopez committed his prior crime on May 25, 2001.  See PSR ¶ 22, at 5-6. The Court believes, however, that it is proper to infer the inclusion of a conviction for possession of drug paraphernalia because in 2000 the Arizona Court of Appeals in Arizona v. Estrada held, and in 2001 the Supreme Court of Arizona affirmed, that such an inference was proper. See 4 P.3d 438 aff'd  34 P.3d 356. While neither Alvarez-Lopez nor the United States provided the Court with the proper version of the statute nor any case law which supported the conclusion that the 2001 version of Proposition 200 included a probationary requirement for a conviction of Drug Paraphernalia regardless of the plain language of the statute, the Court's  research indicates that Arizona case law supports such a conclusion.  See Arizona v. Estrada, 34 P.3d 356 (Ariz. 2001)(holding that "the probation eligibility provisions of Proposition 200 apply to convictions for the possession of items of drug paraphernalia associated solely with personal use by individuals also charged or who could have been charged  with simple use or possession of a controlled substance under the statute.")

The PSR indicates that, in addition to Possession of Drug Paraphernalia, Alvarez-Lopez was initially also charged with Possession of Narcotic Drugs.  See PSR ¶ 22, at 6.  Alvarez-Lopez

committed his prior crime on May 25, 2001 and was sentenced on October 23, 2003. See id. The charge for Possession of Narcotic Drugs was subsequently dismissed by the prosecutor as a result of a plea agreement. See id. Under the holdings of United States v. Robles-Rodriguez, 281 F.3d 900, and Arizona v. Estrada, 34 P.3d 356, the Court believes that Alvarez-Lopez could have received only probation for his prior conviction. Under U.S.S.G. § 2L1.2, therefore, Alvarez-Lopez' sentence does not constitute a felony. Thus, Alvarez-Lopez is not subject to a 4-level enhancement.

The Court believes that this decision is also consistent with the Tenth Circuit cases determining whether a prior conviction is a felony for purposes of U.S.S.G. § 2L1.2 because it looks to the language of the convicting statute as well as the maximum possible sentence the defendant could have received and does not employ the Taylor categorical approach.

**IT IS ORDERED** that the Defendant's Objection to the Pre-Sentence Report and the Defendant's Amended Objection to the Pre-Sentence Report are sustained.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Larry Gomez
    Acting United States Attorney
Roberto Ortega
Kimberly Brawley
    Assistant United States Attorneys
Albuquerque, New Mexico

_Attorneys for the Plaintiff_

-46-

Erlinda O. Johnson
Albuquerque, New Mexico

*Attorney for the Defendant*